I would like to start out by addressing just the burden of proof in this case. In this case, IDEA actually bears the burden of proof because it was dismissed on jurisdictional grounds. They have the burden to overcome to show that there is actually no jurisdiction in this case. As we discussed in our briefs, the school districts and charter schools are treated very the same. At the district court level, the judge did not give us very much reasoning about why IDEA was afforded immunity instead of not being afforded immunity. These arguments were urged multiple times. As I said, there were three rounds of motions for summary judgment. The school after the notices of supplemental authority were filed by IDEA, the judge decided to go ahead and grant immunity. We believe that this was because of a misreading of the RANA case. Because it was within the same court in the Southern District of McAllen and it was against the same party, IDEA Public Schools, we think that they just kind of got lumped in together. The issue with the RANA case was it was a pro se litigant. They brought six different claims for FMLA. Five of them were dismissed on 12B6 grounds and one of them was dismissed on 12B1 ground with leave to obviously refile. The litigant at that, the pro se litigant in that case filed the notice of appeal to appeal that decision but didn't pay the amount to actually appeal that decision. So we didn't get an actual argument on that. So we believe that that independent school districts and that because they do enjoy quite a bit of autonomy that they are not immune to suit. I thought the whole point of charter schools is to give them greater autonomy. So I'm agreeing with you on that point. I thought the whole point of it was, well, in some sense you're connected to the public but you have greater flexibility. Yes, Your Honor, and that is actually how they operate. As I said, I represent charter schools and the way that they are able to conduct their business and teach their classes is very different than the way that you would see regular ISDs conducting their business. It seems that I've read a couple of district court decisions, maybe one of the ones you're referring to, where they say, well, we're arms of the state for the purpose of the 11th Amendment. I think the rationale, correct me if I'm wrong, is that the funding structure is different for charter schools. So if you could respond to that, if that's correct, if that's how we're distinguishing local school districts from charter schools. Yes, Your Honor, and that is the reasoning that the other courts have looked at, that there is more funding that goes into charter schools than there is, more state funding that goes to charter schools than there are for regular ISDs. We believe that that's not something that really should confer immunity here. I mean, if you've got an entity that is intentionally taking someone's intellectual property, then they should have to pay for that. Yeah, I get that, but the question before that is, if you sue them and you win, is the state going to have to pay the judgment? Yes, Your Honor. Going back to Justice Oldham's analogy with regard to the DPS, there are funds that are set aside in order to pay for judgments. I mean, that's something that the Tort Claims Act was put into place, was to compensate people for when wrongs happen. You know, the state wants to take care of situations where someone is wrong and someone is harmed, and in this case, this is that sort of a situation. Our client has been, you know, kind of cheated out of money, and they should be compensated for it. So, you know, the fact that it comes from the state, that money would have been paid to them anyways, if it had been, if the campaign, if the program had been paid for the way that it would with, let's say, Accelerated Reader or another reading program, that money would have been coming from the state anyways. So, it's not a penalty, it's just compensation for the property that's been taken from them. We talk about this a lot in our cases. The Texas Education Code 12.1056 says that charter schools have immunity and liability to suit to the same extent as school districts. This is discussed in the El Paso or Amex case. It seems like I've read a Texas Supreme Court case that actually describes a charter school as, I don't want to say harmed the state, but you know, part of the state or something. Isn't there a recent Texas Supreme Court decision that speaks of them in those terms? Um, I am not familiar with that at this at this second. I'm sure I read it, but, um, Paso Education Initiative versus Amex 2020 decision. Yes, Your Honor. That was that was what do we do with that? Isn't it? Doesn't that put a thumb on the scale or arm of the state for 11th Amendment community purposes? So, um, yes, so they do. That case does refer to, um, the immunity that's granted in exchange for the strict regulations. So that's what what Amex discussed. Our argument here is that they are not being regulated very strictly and that they are actually given a lot of autonomy. As Your Honor said earlier, the the case is it's kind of opposite as to, uh, the the Texas Education Code saying that has the same, um, uh, viability as a school district. And then you have Amex come in and say that there's there's strict regulations. Um, that I believe that case said they're accountable through the oversight of chargers and substantial public funding. Um, our argument is that there's no were being investigated by T. E. A. For misuse of funds. Um, we spoke. I'm looking at page 5 29 of that decision and says we conclude that open enrollment charter schools act as an arm of the state government. Right, Your Honor. So what do we do with that? So as as as we argued in our briefs, we think that as long as charter schools, if you if if that case is controlling as long as charter schools are going along with what they're supposed to do, then that's then I could I could see where that would be applicable. But our argument here is that this charter school in particular is not going along with the regulations that that the state has put into place. Um, instead of using the funds to educate students, they're buying private planes and tickets to to to sports games and, you know, properties down on the border for their their executives to stay in. This was all of this investigation was going on during the time that we were we were doing discovery in this case. Do you agree that we should or must apply the factors from the Clark case from this circuit 1986? So the Clark factors I you can apply them. I think that that wasn't my question. You heard my question. It's it's it's a published opinion of this court that we're normally would be bound by. Is there any reason why you tell us that we aren't bound to apply the Clark factors, whichever way they cut? Sure. And I guess your honor. So I think I you do apply the Clark factors here and and as as we discussed, because they are they do enjoy the charter schools do enjoy a lot of autonomy that that bears against them being an arm of the state. And that is one of the Clark factors is how much autonomy theory. The other factor that we discuss is whether they are concerned with local as opposed to state issues. And with each of the charter schools, they have their own kind of for lack of a better word biome in the cities that they are that they're seated. So so on the source of funds issue at the charter schools receive what well over 80 percent or I mean, what is the record show? What what percentage about approximately do they receive from the state? I believe it's over 90 percent. You're on. Yes. Yes. And you know, that's that's one of the factors that's that's considered. If you look at the way the charter schools actually operate, they they are on a school by school overarching rule that they follow, but it's on a school by school basis. And those schools and this is discussed in the depositions that we took from the from from the teachers that they have their own and especially here, their own reading programs in each individual school. So it's more of a local focus that they operate on as opposed to a statewide focus there. They started down in the Rio Grande Valley, at least idea did and and, you know, have now moved up local on their local area. The other thing that we find very persuasive here is that that idea actually owns its own trademarks and it licensed its trademarks. So it's it's it's one of those things to allow them to have their own trademarks and to to license them to other people, but then not hold them accountable for using somebody else's trademarks and somebody else's reading program without paying them, especially given the amount of money that that they bring in. I mean charter schools bring in a ton of money. I believe ideas assets alone are half a billion dollars. So they have the money to use to to license these reading programs, but they chose not to do it anyways. We spoke with the CEO, Mr. Torkelson in his deposition, and he stated that he they're exactly the same down to the way that the the trophies look, the red carpets, the parties, even the balloon decorations that they put together. They use the same guy down to McAllen to put the balloon decorations together. So there it's it's exact replicas and in our motion for the record to show the counterfeiting that's rampant down there. We had them and we had it in a lot of the cases, but the idea was out of all of the the school districts and the schools that we that we have lawsuits against down there, the most egregious. As we discussed in our 28-day letter that we we filed yesterday and today in light of the DOPS decision that just came down less than two weeks ago, we believe that the court should take another look at the TRCA. The the constitutional underpinnings of where we believe IDEA gets its liability from as the 14th amendment says that there that that each citizen should have the right to property and it should not be taken without due process. The section one and section five say that that Congress can, by appropriate legislation, enact laws to to to make this happen and that was done in the TRCA. The TRCA, the CRCA, and then the Patent Remedy Act all abrogated 11th amendment immunity for for intellectual property infringement. The Allen versus Cooper case, I believe it was a the the judges, it was a 5-4 decision, they discussed possible exclusions for intentional infringement and some of the justices discussed the if there was rampant infringement that there that these TRCAs and CRCAs that that would be adequate penalty for the infringing that was happening. We've got that now. We stated in our papers that the CSIRR, there was a white paper done with investigation into copyright infringement by state actors and that there has actually been a lot of that. We don't have anything done like that in the trademark sense yet, but but we believe in light of the Dodd's decision that that this is something that we can revisit again in the TRCA. All right, thank you, Mr. Yannaros, and you've saved time for rebuttal. Yes, thank you, Your Honor. Good morning, I'm Joe Hoffer, may it please the court, and I'm here for Ideal Public Schools. Charter schools, once upon a time, had a lot of autonomy in Texas. Once upon a time, that would be 1995. Since 1995, their autonomy has greatly been eroded, generally because of bad acts by charter schools, you know, bad facts, bad actors has caused the legislature to erode. In 2000, there was over 100 charter schools that were authorized by our State Board of Education. 2007, a lot of charter schools started getting in trouble. 2013, the law changed to strip away due process to allow the state to shut down charter schools. We saw 50 charter schools revoked or non-renewed, and there was a constitutional challenge made that went all the way up to our Texas Supreme Court, where it did not have constitutional rights, that they were a subordinate unit of government, that they had no constitutional rights as to the state's acts on retroactivity. You know, they challenged whether the state could shut them down for retroactive failures, and the Supreme Court and the Court of Appeals in Austin, which handles all of these cases, decided that, well, you're governmental, so you don't have constitutional rights. Government may do with government what it may, and since then, that line of cases also determined that the state had unfettered discretion to regulate charter schools. That was the Court of Appeals in Austin, which the Supreme Court in the appeal affirmed, and we have that, and so I'll just briefly focus on the what has happened since. In 2020, the Supreme Court heard the El Paso Education Initiatives, which we call Burnham Wood Charter School, a fine client of our firm, appealed the lease case with the American Express Properties. The Texas Supreme Court said, you are an arm of the state, therefore, you have immunity. That's the first case where the Texas Supreme Court had actually affirmatively addressed whether charter schools had governmental immunity. So can we go through the opinion a little bit? I'm looking at page 526, and it says, public school districts are generally entitled to governmental immunity from liability from suit, and then it drops a footnote. It cites this case. This is from Justice Bland's opinion. Page 514, see Wasson interests, quote, political subdivisions of the states, such as counties, municipalities, and school districts, sharing the state's inherent immunity, and then, as you note, she goes on to say, charter schools are effectively like counties, municipalities, and school districts. So I'd ask you the same question I asked your friend in the last argument. I assume you would have to agree, then, that the city of McAllen is an arm of the state. We're different than cities, counties. No doubt. The question is, are they an arm of the state? This court and other courts have ruled that counties and cities are not an arm of the state. How could it possibly be? Well, then, okay, we'll come back to that. That's very important. What about McAllen ISD? Because the entire reasoning of this opinion is that you are interchangeable with the school district. We're not quite interchangeable with the school district. So for, for state law purposes, the legislature says that they wanted to give, the legislature wanted to give us immunity. The legislature said, oh, charter schools, you have immunity from suit, and actually, they said, you have immunity from liability. They never said we had immunity from suit, and then a couple years later, they said, okay, now you have immunity from suit and liability. The courts had never actually granted us immunity, and then the court said, wait a minute, that's our job. We're the ones that confer immunity under the common law, and they had never done that. So finally, the Supreme Court said, that's it. We're recognizing that you are an arm of the state. We're not a political subdivision. Let me read the sentence one more time. Yes. Public school districts are generally entitled to governmental immunity from liability of suit. That's the opinion that you were wrapping around you. That's correct. That's about, in that sentence, not charter schools, that's talking about McAllen ISD. So did the district court err as to McAllen ISD? I believe, looking at the Clark factors, that the district court may have erred for other reasons, not just arm of the state analysis, but because of the autonomy change under the law that's changed affecting school districts. So your position is that both of you are arms of the state. So at least there's some congruence. I, I think looking at the Clark factors as a whole, on balance, that school districts and charter schools should be arms of the state. Great. So at least that solves one problem that, as the case is presented to us, which leads to this incredibly head-scratching result that somehow the public school district is not an arm, but you as a non, as a private corporation could be. So that would be quite odd, but at least you've solved that and I appreciate that. So now let's go back to where we left off, which is the reasoning of this opinion as to governmental immunity is that, and I'll read it and school districts, and then justice plan, as you point out, says, and open enrollment charter schools are arms of the state. So is your position that what she is talking about in this opinion on behalf of the Supreme Court of Texas, that governmental immunity is the same as state sovereign immunity in federal court? Under the Clark factors. We'll get to those in a second. She's not applying Clark. I understand that. And we'll get to it. But I want to, I want to make sure because as judge Duncan raised it as well, and I want to make sure this is going to address your point for sure. The court's told to look at how the state courts treat and classify the entity. The Texas Supreme Court has said we're an arm of the state because the Texas Supreme Court has also said now for the first time, charter schools are an arm of the state. And it also here says counties and cities and school districts are arms of the state. That opinion could be used by counties, cities, and school districts to reopen the past decisions of this court that Tarrant County is not an arm of the state for 11th amendment purposes. And that is an astonishing position. And I'm wondering whether it is undone your case. And here's why, because in 1890, on the very day that the Supreme Court decided Hans versus Louisiana, they decided Lincoln Mills. And they said in Lincoln Mills that political subdivisions of the state are not entitled to state sovereign immunity as a matter of the 11th amendment. And what that proves is that this is not about state sovereign immunity whatsoever. This is about governmental immunity in state court. It has nothing whatsoever to do with the 11th amendment. Correct me if I'm wrong and point it to me because I'd love to see it. I've read the opinion. I don't see her cite a single U.S. Supreme Court case or a single reference to the 11th amendment. She's only talking about whether, again, counties, municipalities, school districts, and now open enrollment charter districts, charter schools, excuse me, are subject to suit in state court. She is saying that under state law, we are considered an arm of the state. Right. Which goes to the Clark factors, which say, how does the state classify you? And under the Clark factors, the state classifies us as an arm of the state. So that's one factor. That's factor one. But it could not possibly be used to undo anything as to counties, cities, or school districts. Well, it's an argument. It's one factor out of six, right? And these factors are not dispositive. Not one factor is dispositive. The most important factor is the second factor, the funding. But the first factor, and we have multiple federal district courts, the Armstrong versus Cumberland Academy of the Eastern District has held that the Cumberland Academy Charter School up in Tyler is an arm of the state and Title 11th amendment immunity. Walker versus Harmony Public Schools in Houston. Judge Rorlein held that Harmony Public Schools is an arm of the state. Hopkins versus Wayside in Austin, the Western District, held arm of the state, and Rayner versus Idea Public Schools. So four other federal district courts, and after this Supreme Court case in Amex, they've all looked at it and said, arm of the state. And they've applied all the factors of Clark and said, arm of the state. So let's do sources of funding. Let's do sources of funding. Suppose, I want to try to make your case stronger, because I want to start with the easier version first. Suppose that Idea had a bill passed by the Texas legislature, and the Texas legislature said, you really are an arm of our state. We really do wrap ourselves in this flag of arm of the state. And we believe it so much that we don't want the Fifth Circuit to screw this up. We don't want anyone to have any ambiguity on the Clark factors. And so what we're going to do is we're going to have an express reimbursement provision. We're going to give you a dedicated cap. It's going to be in the General Appropriations Act. And it's going to say, every year, we're going to set aside a million dollars to pay judgments that might be entered against Idea, or Open Enrollment Department schools, or school districts. Fill it however you want the hypothetical to look. That would have to be, it would satisfy the second Clark factor, right? That would be easier than your case. We're close to that. Let's talk about where we already have under the second Clark factor. Chart 1.1, 94% of our funding for Idea Public Schools come from the state. Most charter schools, it's 90% to 100% of their funding comes from the state. In fact, if we don't have state funds, we don't exist. And that's uncontestable. That's in the record. But they're not paying money. Our funds... I'm trying to make your case easier. Sure. This makes our case easier. The funds we receive, that Idea receives, it doesn't own. It receives the funds under statute and the Commissioner's rules, in trust, on behalf of the state. It holds the funds in trust. They're public funds for all purposes under state law. And they remain funds of the state, in trust, for all purposes, the entire time Idea owns them. And it can only use them for the benefit of students, for the specific educational purposes of its charter. And if the charter ever closes, the money goes back to the state. All the property that Idea owns, buses, cars, buildings, are also held in trust on behalf of the state. The state has an equitable ownership interest in all property. If the charter school ever closes, all property belongs to the state. It comes in and it takes control of it. So Idea actually is a trustee on behalf of the state. It acts on behalf of the state, which is completely different from school districts. What's the point of having charter schools? Well, charter schools were supposed to bring innovative educational opportunities to students and give parents choice to establish a free market in the educational system. That's what I always thought, but this case is now challenging my preconception. Well, it does in terms of educational opportunities in that these charter schools provide unique models of education, and they break the barriers where kids are not required to go to the school in their zip code. Now they can choose to go to a school outside of their zip code. Their zip code doesn't determine where they go to school. And so they still have autonomy with the educational program, but their governance has changed. So the autonomy, so not only is the money, the state's money, the property is the state's money. We act as the trustee on behalf of the state and they own everything. But the state control, they have unfettered discretion to regulate us. Council, before we move off the funds, I'm just trying to get an answer to the question. I'm assuming you would agree it would be an easier application of the second Clark factor if the state agreed to pay your money judgments for you. Because we talked about this in the topside argument. There are two different ways to talk about state funds under the second Clark factor. One is the state just pays the judgment. The other is the state gives you money, you co-mingle it with other money, and then you pay out of the co-mingled funds. I'm asking you which of those is easier for the state. It would be easier if they did that, but the legislature hasn't done that. The court doesn't just look at, like in the Perez case with regional service centers, it didn't just look at is the state going to pay the money. Is it state funds that are going to be jeopardized? Is it the legislature's appropriation that is going to be used to satisfy the judgment? Because all the money we have is funds of the state held in trust, if we were to have a judgment from springboards, a $10 or $20 or $100 million judgment based on the extreme value of their project and their program, 94% of our money and the vast majority of our fund balance is state funds, a judgment would in all likelihood be satisfied with state funds. I completely understand. What I'm trying to understand is what do we do with reimbursement? Or what do we do with where the state is reimbursing the money judgments? And my question for you is how am I supposed to apply the second Clark factor? And do I do it the same way in both circumstances? Or is one better than the other? And I take it from your first answer that in fact, it's an easier set. It doesn't mean you don't win on the second Clark factor. It just means if the state is in fact paying the judgment, that's easier. If the state was paying the judgment, it would be easier. So here's my question. Suppose the Texas Department of Public Safety has an insurance policy that pays the damages suits against Texas state troopers for things that they do in their official capacity. Does that mean that those are state officials when they are having their suits reimbursed by the Texas state legislature? Or by the insurance proceeds? Or you give the exact... Well, the Attorney General of Texas has opined, and I believe this is correct, that when the state or a school system buys insurance, we're paying for the insurance premium with state funds, and the insurance is a property interest. And so the insurance proceeds are fruit of the tree. So the insurance is... State's investing in insurance, and the insurance proceeds are also state funds. So it's all state funds. Okay. So the officer, that is both Texas Department of Public Safety, obviously an arm of the state, and the officer out doing officer stuff is also an arm of the state. Because he's operating under an insurance policy paid for by the state government? The officer acting in the official capacity and had under official immunity? Well, I mean, he's out, you know, riding around his trooper car, stopping people. Maybe he gets in a car accident. Maybe he has a 1983 suit brought against him. There are all sorts of things that they could do, but nothing intentional that would be covered by the insurance. So what we would normally do is we would do an election of remedies. We'd remove, try to get the officer removed, where it's just an action against the entity or the state. And, you know, there's a procedural mechanism we'd get through. Not asking how it's litigated. I'm trying to figure out your understanding of the second Clark factor. And if what I care about is the source of funds, is that source of funds, the fact that the state's paying for it, either through the insurance premium or whatever, does that make all of the officer stuff the act of the state? By the arm of the state doctrine? I don't know that it makes the officer an arm of the state. But I know that... What relevance is the second Clark factor? Like, because you see what I mean? That's even easier than your case, because the state is saying whatever your money judgments are, we're going to pay them. But we don't have that here. We just have the situation of, and I wish we did. What we have here is ideas money, is state money. It acts on behalf of the state. It performs a state function. And it's money, it's trust funds held by the state. It's acting on behalf of the state. It's performing a state function. And that's all it has. But the DPS officer is not? A DPS officer is an individual. He's acting... And it's a different type of immunity also. It's official immunity. It's not 11th Amendment sovereign immunity. And I'm not that...  So I'm... Can I ask you a slightly different question? Yes. Yes, your honor. There is a existing circuit split on whether charter schools are state actors for purposes of 1983 actions. The Fourth Circuit just issued a very lengthy opinion that has many different views on this. I know that we're not talking about state actors here. We're talking about 11th Amendment immunity. But in your view, if we were to find, as some district courts have, that a charter school is an arm of the state for 11th Amendment purposes or gets 11th Amendment immunity, does that by definition mean that a charter school is a state actor for Section 1983? Yeah, we've done that analysis internally. And you have to go state by state because each state treats charter schools differently. And so in Texas, because Texas says we're a governmental unit, Texas courts say we're a subordinate unit of government. Texas courts say we're a governmental entity. Texas courts say we're an arm of the state. Under the 1983 litigation, we already thought we were probably a governmental state actor for purposes of student issues, but maybe not for employment issues before. And then we've got the Fourth Circuit and the split. But in Texas, we would say we probably are a state actor for 1983 purposes and other purposes. We probably are a state actor in Texas because the way our jurisprudence is proved out in Texas, and it's evolved over the last, in 2018-1920, that's where it's fallen. That means that a dress code in a charter school is going to be subject to the same kind of challenge under— It's already happening. —the Convention Clause? It's happening. That means that a religious organization presumably could never operate a charter school? They already can't in Texas based on our Texas Constitution and the requirements of TEA. They already prohibit a religious entity operating a charter school in Texas. Okay. Yeah, that's the Texas Constitution prohibits that. But these types of dress code challenges, we're defending those already. To get to— We've got Clark Factor I, the Supreme Court considers us an arm of the state. Clark Factor II, very important, lots and lots of money, state money. Clark Factor, limited local autonomy. State has unfettered discretion to regulate us per the Court of Appeals and the Texas Supreme Court. The state can reconstitute our corporate board of directors they can reconstitute our board for any number of things, they can control the expansion. If we want a new campus, we have to get permission from TEA. If we want to change our bylaws, we have to get permission from TEA. If we want to move a location of the campus, we have to get permission from TEA. If we want to add an ag program to our school, we have to get permission from TEA. If we want to change our new grades, if we want to add a new grade level, we have to get permission from TEA. If we want to increase our class size or have more students per class, we have to get permission from TEA. If we want to add a new headquarters location, we have to get permission from TEA. These are all in the rules. They have significant control over what a charter school does, where the school districts don't. School districts don't open campuses anywhere. So the legislative creep on charter schools is we report to the TEA, and the risk long term is charter schools, we have a pro-charter school governor, pro-charter school commissioner, but long term, the state has significant control over charter schools in Texas. And again, our property, it's all the state's property. So when you look at the Clark factors, all six on balance, we're an arm of the state. And we believe that entitles us to 11th Amendment immunity. Now, if the court disagrees or finds that we don't, you know, we have a motion for summary judgment all teed up, ready to go. We're not here for that, though. If the court has any questions, I'm ready to answer. All right. Thank you, Mr. Hoffer. Thank you. Thank you. Just a couple of quick points. As I mentioned, I don't remember if it was in this case or the other one, that we filed 16 lawsuits back in 2016. One of them was against Region 1. That case was dismissed on immunity grounds. At that point in time, all of the school districts and the charter schools, everybody had filed similar immunity arguments. And Judge Hinojosa only granted Region 1's dismissal. In his opinion on that, he instructed us that the proper way to go about bringing forth those claims was to file them at the state level. And I think that's what, Your Honors, we're discussing earlier with regards to the difference between governmental and 11th Amendment immunity. So I would, you know, direct the court. I don't have a record site for that. But that was, all those arguments were made at the same level. The district court decided only to grant Region 1's. And that if we needed to go back, and if we wanted to assert the same sort of claims, we needed to do that at the state level. IDEA was not dismissed at that point. The only other point I have is that I would direct the court's attention to the cases that discuss that school districts are not arms of the state. That's the Black v. Panola case, citing San Antonio. In that case, they say ISDs enjoy a great deal of legal and political autonomy and are financially independent and not protected by 11th Amendment immunity. We rest on the remainder of our arguments in our papers. And we would request that the court reverse remand for trial. JUDGE SCHROEDER. Ms. Norris, your case is under submission.  Thank you, Your Honors. JUDGE SCHROEDER. Sure. JUDGE SCHROEDER. Last case for today, Coleman E. Adler & Sons v. Axis Surplus Insurance Company.